UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BETSY WESTOM,

                       Plaintiff,                           Civil No. 04-1734-HA

             v.

                                               OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

                      Defendant.

_____

HAGGERTY, Chief Judge:

      Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (the Act),

as amended, 42 U.S.C. §1383(c)(3), seeking judicial review of a final decision of the

Commissioner of the Social Security Administration.  That decision denied plaintiff's

application for supplemental security income (SSI) and disability insurance benefits (DIB).

For the reasons provided below, the court concludes that the decision of the

Commissioner is not supported by substantial evidence.  Accordingly, the Commissioner's

decision is reversed and this case is remanded for the calculation of an award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI and DIB on October 29, 2001.  She alleged

disability beginning on October 8, 2001.  The claim was denied initially and upon

reconsideration.  A hearing was held before an Administrative Law Judge (ALJ) on May 1,

2003.  The ALJ issued a decision finding plaintiff not disabled on September 30, 2003.

Plaintiff appealed the ALJ's decision.  Upon review of the matter, the Appeals Council

remanded the case for further proceedings.

On October 1, 2004, the ALJ issued a second decision and again found plaintiff not

disabled within the meaning of the Act.  After sixty days, this decision became the final

decision of the Commissioner.  *See* 20 C.F.R. §§ 416.1481, 422.210.

## FACTUAL BACKGROUND

Plaintiff was forty-six at the time of the ALJ's decision.  She has a general education

degree, and has worked in the past as a cook, bartender, silk screener, assembly technician,

and security guard.  Plaintiff alleges disability based on a combination of impairments,

including chronic back, knee, shoulder, and neck pain; obesity; swelling in her limbs;

numbness in her extremities; depression; and anxiety.

Surgery was performed on plaintiff's left knee on August 8, 1997.  On September 20, 1999, plaintiff underwent neck surgery to treat cervical disc problems.

On August 2, 2001, plaintiff sought treatment by Dr. David Mitchell for knee and lower back pain.  Doctor Mitchell assessed the knee pain as "most likely a lateral meniscus tear" and requested an x-ray.  Administrative Record (AR) at 185-86.  At a follow-up appointment two weeks later, Dr. Mitchell requested an Magnetic Resource Imaging (MRI) of the knee.  Doctor Mitchell also noted plaintiff suffered from anxiety and depression, most likely triggered by the dissolution of her marriage, and prescribed Xanax.

Plaintiff was examined by Dr. Mitchell on September 11, 2001 for right shoulder pain that radiated into her arm.  Doctor Mitchell diagnosed tendinitis and prescribed Robaxin and Vicodin.  Plaintiff later returned to Dr. Mitchell for treatment of intense back pain.  Doctor Mitchell diagnosed plaintiff with cervical spondylosis and herniated discs, referred her to a specialist, and prescribed Robaxin and Norco.  AR 178.

Plaintiff presented to the specialist, Dr. Darrell C. Brett, on October 5, 2001.  Plaintiff's MRI revealed some postoperative artifact from her metallic plating, disc bulging at C4-5 and C6-7, and some central canal stenosis at C6-7.  AR 157.  Doctor Brett referred plaintiff for a cervical myelogram, which revealed mild disc protrusion at C3-4, mild anterior extradural defect at C4-5, minimal bony spurring at C5-6, and a slightly prominent broad protusion that effaces the anterior subarachnoid space at C6-7.  AR 160.

/ / /

/ / /

3 - OPINION AND ORDER

Plaintiff underwent an MRI of her thoracic spine and an MRI of her shoulder. The MRI's revealed a small disc herniation at T7-8 and a small acromioclavicular spur that caused an impingement-type syndrome. AR 251, 264.

On February 20, 2002, plaintiff underwent arthoscopic resection surgery on her right shoulder to treat joint arthralgia and chondral damage. A Marcaine pain pump was placed in her shoulder during the surgery. Plaintiff also underwent physical therapy after the surgery.

In February 2002, Dr. Joseph Zitterman of the Canby Medical Clinic tapered plaintiff off of Xanax and replaced it with Effexor to treat her anxiety and depression.

On March 25, 2002, plaintiff reported that her shoulder pain interrupted her sleep and affected her ability to drive a car, lift heavy objects, and perform personal grooming. She reported sharp, burning, tingling, and shooting pain and aching.

On April 25, 2002, plaintiff was examined by Dr. Keith Conant, a mental health specialist. She reported that her depression had remitted, but that her anxiety continued despite previous treatment with Paxil, Ativan, Xanax, and Effexor. AR 381. Plaintiff believed that her anxiety had increased since Dr. Zitterman replaced the Xanax with Effexor. Plaintiff reported feeling isolated, depressed, hopeless, and suicidal. She removed all handguns from her house. Doctor Conant diagnosed plaintiff with major depression (moderate, recurrent) and anxiety disorder. AR 391. He assessed her with a Global Assessment of Functioning (GAF) score of fifty-five, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Doctor Conant prescribed

Klonopin and Effexor. Plaintiff later reported that the medication was effective and her anxiety had stopped.

In June 2002 plaintiff reported that she was able to perform overhead activities without pain. In August 2002 she reported pain in her right back and left arm. She was prescribed Flexeril. In September 2002 Dr. Brett released plaintiff for all activities in regards to her neck, but noted that she had back pain that was a longstanding issue and that she might have spondylotic change in the mid-thoracic spine. AR 409.

Doctor Zitterman requested imaging of plaintiff's back, which revealed degenerative disc change predominantly in the lower aspect. Doctor Zitterman prescribed Celebrex, Flexeril, and Zanaflex.

Plaintiff was examined by neurologist Todd R. Devere, M.D. in November 2002. She reported a two year history of back pain that extended to the right shoulder and neck, intermittent tingling and numbness in her right hand, and intermittent numbness and aching in her right thigh. Doctor Devere assessed thoracic pain and numbness, dermatomal sensory changes on the right side between T8 and T10, right meralgia paresthetica, probable sonsory polyneuropathy caused by diabetes, and probable right carpal tunnel syndrome. AR 420. Doctor Devere ordered an MRI, which revealed mild intervertebral disc space narrowing with mild posterior diffuse bulge of disc material, mild multi-level anterior osteophythic productive alterations, and likely two tiny atypical hemangiomas.

The Oregon Vocational Rehabilitation Division assessed plaintiff as "significantly disabled" by her physical and mental impairments, and determined that she could not do any

5 - OPINION AND ORDER

of her past work and would need "substantial" vocational rehabilitation services, including "extensive counseling" in order to retain gainful employment.  AR 150.

In early 2003 plaintiff continued to report back pain and again underwent physical therapy.

In 2003 plaintiff began treatment with Dr. Eleanor Zawada for her back, neck, and shoulder pain and swelling in her legs.  X-rays of plaintiff's thoracic spine revealed mild to moderate spondylosis.  Doctor Zawada increased plaintiff's narcotic pain doses to 100 tablets of Vicodin and 100 tablets of cyclobenzaprine a month, and instructed her to elevate her legs and use support stockings.  AR 515.

In April 2004 plaintiff was examined by Dr. Zawada for pain in her left hip.  Doctor Zawada assessed probable trochanteric bursitis and instructed plaintiff to perform stretching exercises, avoid prolonged sitting, standing, or walking on hard surfaces.  AR 509.

## QUESTION PRESENTED

Plaintiff asserts that the ALJ erred in: (1) failing to comply with the remand order by the Appeals Council; (2) improperly rejecting plaintiff's own testimony; (3) performing an incomplete assessment of plaintiff's Residual Functioning Capacity (RFC); and (4) improperly relying upon the vocational expert (VE).

## STANDARDS

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence

6 - OPINION AND ORDER

means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039 (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40. However, a decision supported by substantial evidence still must be set aside if the Commissioner failed to apply the proper legal standards in weighing the evidence and making the decision. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court and turns on the apparent utility of such proceedings. 42 U.S.C. § 405(g) (sentence four); *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000); *see also Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

## **DISCUSSION**

### The ALJ failed to comply with the Order of Remand

An order by the Appeals Council is given the force of law and the ALJ "shall" take any action that is ordered. 20 C.F.R. § 404.977(b).

In reviewing the first opinion by the ALJ, the Appeals Council found that the ruling failed to contain an adequate evaluation of the testimony of the medical expert, Dr. Duckler. AR 467. During the first hearing, Dr. Duckler testified that a ten pound weight

7 - OPINION AND ORDER

limitation was appropriate for plaintiff, resulting in sedentary work, and that plaintiff required a sit/stand option. AR 581. The ALJ adopted Dr. Duckler's assessment requiring the sit/stand option, but, without explanation, ignored his remaining testimony. The Appeals Court noted this inconsistency and ordered the ALJ to give "further consideration to all the opinions of the medical expert and explain the weight given said opinions." AR 468.

During the second hearing, Dr. Duckler testified that light exertion work with a weight limitation of twenty pounds was acceptable. The discrepancy in Dr. Duckler's testimony was addressed at the hearing, and the ALJ asserted that he would hold Dr. Duckler to his original testimony. AR 604.

The ALJ's second ruling, which is now before this court, summarized Dr. Duckler's testimony as approving "light exertion" work with a twenty pound weight limitation. The ALJ stated that he "concur[s] with and give[s] great weight to the opinions of the impartial medical expert" and then accepted the light exertion and twenty pound limitation assessment. AR 15. This contradicts the ALJ's statement at the hearing that he would hold Dr. Duckler to the original testimony limiting plaintiff to sedentary work with a ten pound weight limitation. The ALJ did not provide any reason for this departure. Significantly, counsel for plaintiff was deprived of the opportunity to examine Dr. Duckler effectively because of the ALJ's representations that he would disregard the conflicting aspects of Dr. Duckler's testimony.

The new opinion promulgated by ALJ fails to comply with the remand order to consider all of the original opinions offered by Dr. Duckler and to explain the weight given to each.  The ALJ's second decision merely obfuscates the matter further by referincing the great weight given to all the opinions of Dr. Duckler but, in the final analysis, accepting only the contradictory testimony without explanation and in direct contrast to the ALJ's prior representation at the hearing.

The Appeals Council also ordered the ALJ to give further consideration to plaintiff's  RFC "during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations."  AR 468.  In assessing plaintiff's RFC, the only rationale offered by the ALJ that was supported by specific evidence was a summary of portions of plaintiff's testimony from the first hearing that described some of the chores she performed.  Without explanation, the ALJ ignored plaintiff's testimony at the second hearing indicating she could no longer perform most of those chores due to increased symptoms arising during the eighteen months between the hearings.  The ALJ also ignored the portions of plaintiff's original testimony indicating plaintiff had to rest for thirty minutes after fifteen minutes of performing chores, could not sit for more than sixty minutes, and could not stand for more than two hours.  The opinion fails to provide adequate rationale with specific evidence in the record to support the RFC assessment.

9 - OPINION AND ORDER

The ALJ failed to properly credit the testimony of plaintiff

In evaluating a plaintiff's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen,* 80 F.3d at 1281-82.

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

When determining that subjective testimony is not credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 720)).

10 - OPINION AND ORDER

If the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that the plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may reject testimony regarding the severity of the plaintiff's symptoms only if there are clear and convincing reasons, supported by substantial evidence, for doing so. *Rollins*, 261 F.3d at 856. The proffered reasons must be adequately specific to permit a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit it. *Id.* at 856-57 (citation omitted).

In this case, plaintiff produced objective medical evidence of underlying impairments that could reasonably be expected to produce some degree of symptoms. Accordingly, the ALJ was required to provide clear and convincing reasons to reject her testimony. The ALJ failed to meet this burden. The only reason provided by the ALJ for rejecting plaintiff's testimony was that this testimony was inconsistent with the medical evidence as "to the frequency and severity levels that she alleges in her reports to doctors." AR at 16.

The medical evidence supports plaintiff's claims. Repeated imaging of plaintiff's neck, back, and shoulder revealed bulging discs, herniated discs, bony spurs, and osteoarthritis. Plaintiff was diagnosed with end-stage degenerative joint disease in her shoulder, loss of the majority of cartilage in her knee, spondylosis in her spine, and canal stenosis in her neck. She even endured separate knee, neck, and shoulder surgeries in an

attempt to reduce her pain.  The medical evidence also reflects years of extensive pain

management medication and medication for anxiety and depression.

Moreover, even if the medical record did not support the frequency and severity of

plaintiff's claims, the ALJ "may not reject a claimant's subjective complaints based solely

on a lack of objective medical evidence to fully corroborate the alleged severity of pain."

*Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*).  Pain is subjective and

"cannot be objectively verified or measured."  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.

1989).  To find a claimant's allegations of severity not credible, "an adjudicator must

specifically make findings which support this conclusion."  *Bunnell,* 947 F.2d at 345.  The

ALJ made no such findings in this case.

There is authority within the Ninth Circuit that in cases in which the ALJ's reasons

for rejecting the claimant's testimony are legally insufficient, and the record is clear that the

claimant would be found disabled if the claimant's testimony were credited, a remand

ordering the calculation and award of benefits is appropriate.  *McCartey v. Massanari*, 298

F.3d 1072, 1076-77 (9th Cir. 2002); *see also Swenson v. Sullivan*, 876 F.2d 683, 689 (9th

Cir. 1989).

Recently, one panel in the Ninth Circuit has questioned whether this "crediting as

true" doctrine is mandatory.  *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)

("[i]nstead of being a mandatory rule, we have some flexibility in applying the 'crediting as

true' theory.").  The "crediting as true" rule was established in *Varney v. Sec'y of Health

and Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) (referred to as "*Varney II*").  In adopting

the "crediting as true" rule of the Eleventh Circuit, the Ninth Circuit acknowledged that the rule promotes important objectives: "Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'" *Id.* at 1398 (citation omitted).

This court construes the reasoning in *Connett* to permit some exercise of discretion in determining whether to credit a claimant's improperly rejected pain testimony as true. Moreover, the validity of these rulings limiting the "crediting as true" doctrine is unclear. Only a panel sitting *en banc* may overturn existing Ninth Circuit precedent. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (citations omitted); *see also Baker v. City of Blaine*, 221 F.3d 1108, 1110 n.2 (9th Cir. 2000) (a court panel has no authority to disavow the holdings of a prior panel).

Because the court finds that the ALJ failed to comply with the remand order and failed to properly credit plaintiff's testimony, the court need not address plaintiff's additional arguments.

Remand for Benefits or Further Proceedings

Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman*, 211 F.3d at 1179. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Id.* at 1178. A reviewing court should credit evidence

13 - OPINION AND ORDER

and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. *Smolen*, 80 F.3d at 1292.

Under these standards, remand for a finding of disability and an award of benefits is appropriate here. The ALJ failed to comply with the remand order of the Appeals Council and failed to provide a legally sufficient reason for rejecting plaintiff's testimony.

It is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited, and additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. The record is fully developed, and further proceedings "would serve no useful purpose." *See Smolen*, 80 F.3d at 1292; *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits). When it is evident from the record that benefits should be awarded, remanding for further proceedings would only needlessly delay the realization of the primary purpose of the Act. *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) (citation omitted); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993).

Moreover, permitting the Commissioner yet another opportunity to amend findings to comport with the denial of disability benefits is not in the interests of justice. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings

would only delay the receipt of benefits, judgment for the claimant is appropriate).  Here, the Commissioner has already had two full hearings and promulgated two opinions, and the interests of justice are served by remanding for a payment of benefits.

## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner finding plaintiff Betsy Westom not disabled is reversed.  This action is remanded for calculation of benefits.

IT IS SO ORDERED.

DATED this _28____ day of February, 2006.


_____/s/Ancer L.Haggerty_____
Ancer L. Haggerty
United States District Judge

15 - OPINION AND ORDER